UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

LARRY STEED,                                    Case No. 1:17-cv-540

　　　　　　　　　Petitioner,          Honorable Robert J. Jonker

v

SHIRLEE HARRY,

　　　　　　　　　Respondent.
_____/

## **OPINION**

　　　　　This is a habeas corpus action brought by a state prisoner under 28 U.S.C. § 2254.

Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary

review of the petition to determine whether "it plainly appears from the face of the petition and any

exhibits annexed to it that the petitioner is not entitled to relief in the district court."  Rule 4, RULES

GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243.  If so, the petition must be summarily dismissed.

Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen

out" petitions that lack merit on their face).  A dismissal under Rule 4 includes those petitions which

raise legally frivolous claims, as well as those containing factual allegations that are palpably

incredible or false.  *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999).  After undertaking the

review required by Rule 4, the Court concludes that the petition must be dismissed because it fails

to raise a meritorious federal claim.

## Discussion

I.     Factual allegations

Petitioner Larry Steed is presently incarcerated with the Michigan Department of Corrections at the Earnest C. Brooks Correctional Facility.  Petitioner is serving the following sentences: (A) 13 years, 4 months to 20 years for conspiring to deliver or manufacture less than 50 grams of cocaine; (B) life imprisonment for conspiring to deliver or manufacture 650 grams or more of cocaine; (C) 20 to 30 years for possession of 225-649 grams of cocaine; and (D) 22 years, 6 months to 45 years for delivery or manufacture of 225-649 grams of cocaine.  Petitioner alleges that sentences (A) and (B) are concurrent to each other and sentences (C) and (D) are concurrent to each other, but sentences (A) and (B) are consecutive to sentences (C) and (D).

Petitioner's constitutional challenges do not relate to his convictions or his sentences as imposed; rather, they relate to his eligibility for parole.  In Michigan, generally, an inmate is eligible for parole when the inmate has served a period of time equal to the minimum sentence imposed by the court for the crime of which he was convicted, less good time and disciplinary credits.  MICH. COMP. LAWS § 791.234.  The determination of eligibility is rendered more complex by consecutive sentences and life sentences.  *Id.*

Life sentences, which have no minimum term, would seem to fall outside the parole system.  The Michigan legislature allowed "lifers" parole consideration for the first time in 1941:

> The first "lifer law" came into effect in 1941, granting parole eligibility to prisoners sentenced to life in prison for crimes other than first-degree murder after serving ten calendar years. Before its enactment, those life sentences would have to have been served in their entirety unless commuted by the Governor or a pardon was granted. The lifer law has been revised through the years, but at the time of defendant's sentencing, MCL 791.234 provided that he would be subject to the jurisdiction and authority of the parole board after serving ten calendar years. It also appears that at the time of defendant's sentencing, a perception commonly held by legal practitioners, as well as some judges, was that a "parolable life" sentence did

2

not mean life; rather, it meant between twelve and twenty years in prison. *See, e.g., People v. Lino (After Remand)*, 213 Mich.App. 89, 95-98, 539 N.W.2d 545 (1995), *overruled by People v. Carson*, 220 Mich.App. 662, 673-674, 560 N.W.2d 657 (1996); *see, also*, Prisons and Corrections Section of the State Bar of Michigan, *What should "parolable life" mean? Judges respond to the controversy* (March 2002), available at <http://www.capps-mi.org/pdfdocs/JudicialSurvey.pdf> (accessed June 24, 2005). In fact, defendant's sentencing judge also believed that a parolable life sentence was less harsh than a long indeterminate term sentence because of the earlier opportunity for parole. This belief seems to have been somewhat supported by parole data; for example, from 1941 through 1974, 416 parole-eligible lifers were paroled, averaging twelve a year.

However, it appears that there was a change in parole practice, because from 1975 through 1992 only sixty-five parole-eligible lifers were paroled, for an average of less than four a year. In 1992, the parole board was restructured, both in number and composition, and it continued the practice of the prior seventeen years in granting fewer paroles. "The primary goal of the reorganization was to increase public safety by minimizing the number of dangerous and assaultive prisoners being placed on parole." Michigan Parole Board website, Introduction <http://www.michigan.gov/corrections/0,1607,7-119-1378-22894-,00.html> (accessed June 24, 2005).

*People v. Hill*, 705 N.W.2d 139, 141 (Mich. Ct. App. 2005). The current "lifer" law requires terms of imprisonment ranging between 10 and 20 years before a "lifer" can be considered for parole depending on the crime for which he was convicted and whether he has committed other serious crimes. MICH. COMP. LAWS § 791.234.

Petitioner's situation is also complicated by the fact that some of his sentences are concurrent and some are consecutive. The statute provides that parole eligibility for a prisoner serving consecutive sentences is determined by adding the minimum sentences. *Id*. That apparently created some confusion in Petitioner's case because his life sentence is consecutive to  concurrent sentences with minimums of 20 and 22 years, 6 months.

The determination of Petitioner's parole eligibility date has changed several times over the years of his incarceration. The variability of Petitioner's determined parole eligibility date has frustrated him. On July 30, 2013, Petitioner filed his first habeas petition that included that

issue.  *See Steed v. Berghuis*, 1:13-cv-845 (W.D. Mich.) (1:13-cv-845, PageID.26) ("[W]hy [do] the

parole eligibility dates keep changing.").   The Court dismissed that petition on initial review

reasoning:

> [T]here is no constitutional or inherent right to be released before the expiration of a prison sentence.  Although a state may establish a system for early release on parole, it has no duty to do so; thus, the presence of a parole system by itself does not give rise to a constitutionally protected liberty interest in parole release.  *Greenholtz v. Inmates of Neb. Penal & Corr. Complex*, 442 U.S. 1, 7, 11 (1979); *Bd. of Pardons v. Allen*, 482 U.S. 369, 373 (1987).  Rather, a liberty interest is present only if state law entitles an inmate to release on parole.  *Inmates of Orient Corr. Inst. v. Ohio State Adult Parole Auth.*, 929 F.2d 233, 235 (6th Cir. 1991).
>
> In *Sweeton v. Brown*, 27 F.3d 1162 (6th Cir. 1994) (en banc), the Sixth Circuit, noting "the broad powers of the Michigan authorities to deny parole," held that the Michigan system does not create a liberty interest in parole.  *Id.* at 1164-65; *see also Crump v. Lafler*, 657 F.3d 393, 404 (6th Cir. 2011) (holding that the adoption of specific parole guidelines since *Sweeton* does not lead to the conclusion that parole release is mandated upon reaching a high probability of parole); *Carnes v. Engler*, 76 F. App'x 79, 80 (6th Cir. 2003).  In addition, the Sixth Circuit has rejected the argument that due process is implicated when changes to parole procedures and practices have resulted in incarcerations that exceed the subjective expectation of the sentencing judge.  *See Foster v. Booker*, 595 F.3d 353, 369 (6th Cir. 2010).  Finally, the Michigan Supreme Court has recognized that there exists no liberty interest in parole under the Michigan system.  *Glover v. Mich. Parole Bd.*, 596 N.W.2d 598, 603-04 (Mich. 1999).
>
> Furthermore, an inmate has no constitutional or inherent right to early release through executive clemency or commutation.  *Ohio Adult Parol Auth. v. Woodard*, 523 U.S. 272, 280 (1998); *Conn. Bd. of Pardons v. Dumschat*, 452 U.S. 458, 464 (1981).  Moreover, because the Governor of Michigan has broad discretionary power to commute sentences, Michigan prisoners do not have a state-created liberty interest in commutation.  *Manning v. Unknown Parties*, 56 F. App'x 710, 711 (6th Cir. 2003); *Moran v. McGinnis*, 1996 WL 304344, at *2 (6th Cir. June 5, 1996); *Vertin v. Gabry*, No. 94–2267, 1995 WL 613692, at *1 (6th Cir. Oct. 18, 1995).  In the absence of a protected liberty interest, Petitioner Steed cannot raise a due process claim.
>
> In summary, Petitioners' challenge to a state agency's response to their FOIA request is outside the scope of federal habeas review, and Petitioner Steed's claim that the parole board violated his right to due process is meritless on its face.

(1:13-cv-845, PageID.34-35.)

It appears Petitioner's parole eligibility date is now settled: June 24, 2008.  (Pet. Attach. 1, ECF No. 1-1 PageID.5.)  But that is the third parole eligibility date the Michigan Department of Corrections has offered Petitioner in the last year.  As of the date of the Court's opinion in *Steed v. Berghuis*, the determined parole eligibility date was October 11, 2016.  (Oct. 9, 2013 MDOC Correspondence, ECF No. 2-1, PageID.65.)  Based on that date, the parole board scheduled a public hearing for February 13, 2017.  (Dec. 22, 2016 MDOC Correspondence, ECF No. 2-1, PageID.69.)  The hearing never took place.[1]  The parole board cancelled it at the end of January, 2017, because it had been informed that Petitioner's parole eligibility date was actually August 27, 2020. (Jan. 24, 2017 MDOC Correspondence, ECF No. 2-1, PageID.71.) Petitioner filed a grievance regarding the 2020 date.  The step one response to that grievance resulted in the June 24, 2008 parole eligibility determination.  (Step 1 Grievance Response, ECF No. 2-1, PageID.75.)

Even though the parole board cancelled the public hearing based on what now appears to be an erroneous parole eligibility date, it reviewed Petitioner anyway.  The parole board expressed no interest in taking action in Petitioner's favor.  (Parole Board Notice of Decision, ECF No. 2-1, PageID.73.)  It had reached the same decision in 2014 at the conclusion of Petitioner's 5-year lifer review.  (Parole Board Notice of Decision, ECF No. 2-1, PageID.65, 67.)  Petitioner's next scheduled review is August 27, 2020.  (Parole Board Notice of Decision, ECF No. 2-1, PageID.73.)

---

[1]  A public hearing is required before the parole board may decide to grant or deny parole. MICH. COMP. LAWS § 791.234(8)(c). The public hearing process for "lifers" has a different statutory foundation than the process for prisoners serving "term of years" sentences.  The process for "lifers" is set out in MICH. COMP. LAWS § 791.244.  MICH. COMP. LAWS § 791.234(8)(c).  It is the same process that is used for reprieves, commutations and pardons.  A public hearing is not required unless the parole board, following investigation, decides to proceed with a public hearing.  MICH. COMP. LAWS § 791.244(2)(f).  A determination that the parole board is not interested in proceeding is the functional equivalent of a decision to *not* proceed to a public hearing.  *See Gilmore v. Parole Board*, 635 N.W.2d 345, 349 (Mich. Ct. App., 2001).  That decision is not reviewable.  *Id*. at 347.

Petitioner contends that the Michigan Department of Corrections has denied him a parole hearing as required by state law even though he has been parole eligible for almost a decade.[2] Petitioner argues that by cancelling the public hearing, the Michigan Department of Corrections and the parole board have violated Petitioner's substantive due process and equal protection rights.

II.    Petitioner's claims may be raised in a habeas corpus petition

If Petitioner were to prevail on his claims, it would not necessarily impact the fact or duration of his confinement.  Petitioner seeks a public parole hearing.  Such a hearing might or might not result in his earlier release.  In *Wilkinson v. Dotson*, 544 U.S. 74, 79-80 (2005), the Court determined that constitutional challenges to the fact or duration of confinement, though they might fall within the broad language of a § 1983 claim, could only be brought in a habeas corpus action because such challenges lie at the core of habeas corpus, the "more specific . . . 'instrument to obtain release from [unlawful] confinement.'"  But, where the prevailing inmate would be entitled to "at most a new parole hearing at which . . . parole authorities may, in their discretion, decline to shorten his prison term[,]" the inmate's claims are cognizable under § 1983.  *Id*. at 82.

Because Petitioner seeks the same relief, *Wilkinson* permits him to bring his claim under § 1983.  But does *Wilkinson* require him to do so?  Are § 1983 claims and habeas corpus claims mutually exclusive?  The Sixth Circuit says they are not.  *Terrell v. United States*, 564 F. 3d 442, 446 n. 8 (6th Cir. 2009); *Adams v. Bradshaw*, 644 F.3d 481, 483 (6th Cir. 2011).  Accordingly, though Petitioner's case may reside at the margins, rather than the core, of habeas corpus, this Court has jurisdiction to consider them.

---

[2]  Petitioner provides no support for his contention that one who is parole eligible is entitled to a hearing. *Gilmore* indicates that until a "lifer" inmate has been interviewed, has received a notice indicating interest in taking further action, and has avoided a judicial veto, he is not entitled to a hearing.  *Gilmore*, 635 N.W.2d at 350-351. Petitioner has never made it past the first step.

III.    AEDPA standard

This action is governed by the Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. 104-132, 110 Stat. 1214 (AEDPA).  *See Penry v. Johnson*, 532 U.S. 782, 792 (2001). The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law.  *Bell v. Cone*, 535 U.S. 685, 693-94 (2002).  The AEDPA has "drastically changed" the nature of habeas review.  *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001).  An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication:  "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding."  28 U.S.C. § 2254(d).  This standard is "intentionally difficult to meet."  *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (internal quotation marks omitted).

IV.    Exhaustion

Before the court may grant habeas relief to a state prisoner, the prisoner must exhaust remedies available in the state courts.  28 U.S.C. § 2254(b)(1); *O'Sullivan v. Boerckel*, 526 U.S. 838, 842 (1999).  Exhaustion requires a petitioner to "fairly present" federal claims so that state courts have a "fair opportunity" to apply controlling legal principles to the facts bearing upon a petitioner's constitutional claim.  *See O'Sullivan*, 526 U.S. at 842; *Picard v. Connor*, 404 U.S. 270, 275-77 (1971) (cited by *Duncan v. Henry*, 513 U.S. 364, 365 (1995) and *Anderson v. Harless*, 459 U.S. 4, 6 (1982)).  To fulfill the exhaustion requirement, a petitioner must have fairly presented his federal claims to all levels of the state appellate system, including the state's highest court.  *Duncan*, 513

U.S. at 365-66; *Wagner v. Smith*, 581 F.3d 410, 414 (6th Cir. 2009); *Hafley v. Sowders*, 902 F.2d 480, 483 (6th Cir. 1990).  "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process."  *O'Sullivan*, 526 U.S. at 845.

In this instance, Petitioner has not presented his federal constitutional claims to any level of the state courts or even the Parole Board.  Under relatively recent statutory and rule amendments by the Michigan Legislature and Michigan Supreme Court, respectively, a prisoner no longer has an ability to appeal a parole denial under state statute.  The former version of Mich. Comp. Laws § 791.234(8) provided that the grant or denial of parole by the Michigan Parole Board could be appealed to the circuit court by the prisoner, prosecutor or victim.  *See* MICH. COMP. LAWS § 791.234(8) (West. 1999).  The new version eliminated the ability of a prisoner to appeal a parole denial, and provides only that a grant of release on parole may be appealed by the prosecutor or the victim.  *See* MICH. COMP. LAWS § 791.234(11) (as amended by 1999 Mich. Pub. Acts 191).  The legislation was approved on November 24, 1999.  Following the lead of the Michigan Legislature, the Michigan Supreme Court amended Michigan Court Rule 7.104, effective March 10, 2000, eliminating the provisions regarding the methods by which a prisoner could appeal a parole denial. *See* MICH. CT. R. 7.104(D)(1), (2)(a).  However, certain types of parole denial claims involving radical defects in legal process may be cognizable in state habeas corpus proceedings or by complaint for an order of mandamus.  *See Morales v. Michigan Parole Board*, 676 N.W.2d 221, 229-30 (Mich. Ct. App. 2003), *lv. app. denied* 682 N.W.2d 90 (Mich. 2004).     With respect to claims that the Parole Board expressed no interest in proceeding further and thereby declined to conduct a public hearing, however, the Michigan courts have clearly held that there is no review. *See Gilmore v. Parole Board*, 635 N.W.2d 345, 347 (Mich. Ct. App., 2001).

8

Consequently, Petitioner appears to have no available state court remedy in which to exhaust his claims.  Even if he did have a method to challenge the decision, such as a state writ of habeas corpus or mandamus, *see Morales*, 676 N.W.2d at 229-30, the Court could still deny his action on the merits.  *See* 28 U.S.C. § 2254(b)(2).

V.    State law violations

Petitioner's brief provides an exhaustive analysis of all the ways the MDOC and the Parole Board failed to properly determine his parole eligibility over the years of Petitioner's incarceration.  (Pet.'s Br., ECF No. 2.)  Petitioner argues that the determination was unlawful because the state actors failed to follow their own statutes, regulations, and procedures.  "[A] federal court may issue the writ to a state prisoner 'only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wilson v. Corcoran*, 562 U.S. 1, 5 (2010) (quoting 28 U.S.C. § 2254(a)).  A habeas petition must "state facts that point to a 'real possibility of constitutional error.'"  *Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977) (quoting Advisory Committee Notes on Rule 4, RULES GOVERNING HABEAS CORPUS CASES).  The federal courts have no power to intervene on the basis of a perceived error of state law.  *Wilson*, 562 U.S. at 5; *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle v. McGuire*, 502 U.S. 67-68 (1991); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).  Petitioner's claim that the MDOC and Parole Board failed to follow state statutes, regulations, and procedures is not cognizable on habeas review.

VI.    Substantive due process

As set forth fully in this Court's opinion in *Steed v. Berghuis*, 1:13-cv-845 (W.D. Mich.), parole denial does not give rise to a cognizable claim for a violation of procedural due process.  (1:13-cv-845, PageID.34-35.)  There is simply no liberty interest to protect.  Nonetheless, "substantive due process protects inmates from arbitrary denials of parole based on impermissible

criteria such as race, political beliefs or frivolous factors, such as eye color, even where a prisoner

may not have a protected liberty interest." *Mayrides v. Chaudhry*, 43 F. App'x 743, 746 (6th Cir.,

2002).  To demonstrate constitutionally arbitrary conduct prohibited by substantive due process,

Petitioner must show that the Parole Board's conduct shocks the conscience and constitutes an

"egregious abuse of governmental power." *Hampton v. Hobbs,* 106 F.3d 1281, 1288 (6th Cir. 1997);

*see also County of Sacramento v. Lewis*, 523 U.S. 833, 847 (1998); *Rimmer-Bey v. Brown*, 62 F.3d

789, 791 n.4 (6th Cir. 1995).   Petitioner has failed to allege arbitrary or egregious conduct here.

Instead, he has alleged facts showing only that the persons who calculated his parole eligibility date

erred, under state law.  Although Petitioner invites the Court to infer a conspiracy motivated by

animus, he acknowledges that is "pure speculation[.]"  (Pet.'s Br., ECF No. 2, PageID.19.)  That

does not suffice to state a substantive due process claim.

       VII.    Equal protection

Petitioner further claims that the Parole Board and/or MDOC violated his Fourteenth

Amendment equal protection rights when they treated him differently from other similarly situated

prisoners.  The Equal Protection Clause of the Fourteenth Amendment provides that a state may not

"deny to any person within its jurisdiction the equal protection of the laws," which is essentially a

direction that all persons similarly situated should be treated alike.  U.S. CONST., amend. XIV; *City*

*of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985).  A state practice generally will not

require strict scrutiny unless it interferes with a fundamental right or discriminates against a suspect

class of individuals. *Mass. Bd. of Ret. v. Murgia*, 427 U.S. 307, 312 (1976).  Because a fundamental

right is not implicated in this case and Petitioner does not allege that he is a member of a suspect

class, he is not entitled to strict scrutiny.  Instead, the decision to deny Petitioner's parole need only

be rationally related to a legitimate governmental interest. *See United States v. Kras*, 409 U.S. 434,

446 (1973); *Hampton v. Hobbs*, 106 F.3d 1281, 1286 (6th Cir. 1997).  To prove his equal protection

claim, Petitioner must demonstrate "intentional and arbitrary discrimination" by the state; that is,

he must demonstrate that he "has been intentionally treated differently from others similarly situated

and that there is no rational basis for the difference in treatment." *Vill. of Willowbrook v. Olech*, 528

U.S. 562, 564 (2000).

> The entirety of Petitioner's allegations of discriminatory treatment are set forth
below:

> > Steed also asserts that he was denied Equal Protection, as other prisoners with the
> > Michigan Department of Corrections were afforded application of law, while he was
> > not, while similarly situated.  (Pet., ECF No. 1, PageID.2.)

> > Steed asserts that other prisoners who had relevant charges that fell under PA 670 of
> > 2002 were afforded the reductions required by the change in the law.  Steed has not
> > been allowed to have a parole hearing because of the actions of the MDOC,
> > specifically CTCU, and has been treated differently than other prisoners for no
> > apparent reason.  An Equal Protection claim maybe [sic] brought under the theory
> > the individual is a "class of one" where the person claims, as in this case, he has been
> > intentionally treated differently from others similarly situated, and that there is no
> > rational basis for the difference in treatment.  (Pet.'s Br., ECF No. 2, PageID.22.)

Petitioner's vague, conclusory allegations of discrimination are not enough to state an equal

protection claim.  "Some factual basis for such claims must be set forth in the pleadings." *Chapman*

*v. City of Detroit*, 808 F.2d 459, 465 (6th Cir.1986); *see also Lillard v. Shelby County Bd. of Educ.*,

76 F .3d 716, 726 (6th Cir. 1996) (an equal protection claim which is not supported by factual

allegations may be dismissed as being only conclusory); *Blackburn v. Fisk Univ.*, 443 F.2d 121, 123-

24 (6th Cir. 1971) (same).

> Petitioner does not identify any other prisoners or explain how they were treated

differently.  Petitioner offers no proof that other inmates "were similarly situated to him in all

respects that are material to the parole assessment."   *See Barker v. Conerly*, No. Civ.

05CV74408DT, 2006 WL 305643, at *3 (E.D. Mich. Feb. 9, 2006) (*citing Linger v. Akram*, 23 F. App'x 248, 252 n. (6th Cir. 2001)). Without such averments, he fails to state a claim that his equal protection rights were violated. "In light of the number of factors that a parole board must consider in determining whether to grant a prisoner parole release, a habeas petitioner's bare assertion that his parole application was rejected while similarly situated prisoners were granted parole is insufficient to state a claim upon which habeas relief can be granted." *Barker*, 2006 WL 305643, at *3 (citing *Davis v. Thomas*, 269 F. Supp.2d 335, 337 (S.D.N.Y.2003)). Petitioner's allegations therefore are insufficient to give rise to a cognizable equal protection claim.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit that service is not warranted. *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir.

1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability. *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001). Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted. *Id.* at 467. Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000). *Murphy*, 263 F.3d at 467. Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard. Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Id.* "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003). In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims. *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong. Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.

Dated:      July 28, 2017              /s/ Robert J. Jonker
                                         ROBERT J. JONKER
                                         CHIEF UNITED STATES DISTRICT JUDGE